COMMONWEALTH *vs.* JOSEPH MORRIS.

Suffolk. March 7, 2013. - July 11, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,* Instructions to jury. *Evidence,* Flight, Consciousness of guilt, Self-defense. *Self-Defense.*

At the trial of an indictment charging aggravated assault and battery by means of a dangerous weapon (a knife), the judge acted within her discretion in deciding to give, over objection, an instruction on consciousness of guilt, despite the defendant's assertion that he had acted in self-defense and that his flight was the result of fear brought on by the circumstances of his situation, where the evidence of flight was relevant and the instruction, which did not tend to indorse as true any inferences from the defendant's conduct, complied with standards established by this court. [737-739]

Statement that while Instruction 3.580 of the Criminal Model Jury Instructions for Use in the District Court (2009) on consciousness of guilt is thoughtful and well balanced, in cases involving a question of self-defense in which a defendant objects to the inclusion of such an instruction in the jury charge, a judge should give careful consideration whether the instruction would serve a useful and proper purpose and whether it should be given at all; and that if a judge decides to give such an instruction over a defendant's objection, then the judge should consider whether highlighting (or leading with) the portion of the instruction pertaining to the fact that innocent people do engage in the particular conduct at issue, and that such conduct does not necessarily reflect feelings of guilt but may be consistent with self-defense, would better preserve the neutrality of the instruction. [739-740]

INDICTMENT found and returned in the Superior Court Department on August 17, 2006.

The case was tried before *Nancy S. Holtz,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*James P. Vander Salm* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

SPINA, J. In the early morning of November 27, 2005, the

defendant, Joseph Morris, stabbed Kevin Burns in the chest during a brief altercation on Portland Street in Boston. A Suffolk County grand jury indicted the defendant on a charge of aggravated assault and battery by means of a dangerous weapon (a knife), in violation of G. L. c. 265, § 15A (*c*). Following a jury trial in April, 2010, the defendant was convicted of the lesser included offense of assault and battery by means of a dangerous weapon. He appealed from his conviction, and we granted his application for direct appellate review. The defendant contends that the judge should not have given a consciousness of guilt instruction pertaining to flight, over his objection, where he proceeded on a theory of self-defense and claimed that his flight was the result of fear brought on by the circumstances of his situation. We affirm.

1. *Background.* The jury could have found the following facts. At approximately 2 A.M. on November 27, 2005, the defendant and his friend, Steven Monge, left Porters Bar and Grill, located near North Station, and began walking down Portland Street in the direction of Monge's vehicle, which was parked near the corner of Valenti Way. Around this same time, Ryan Flanagan and Kevin Burns left the Purple Shamrock, a nearby bar and restaurant, and began walking up Portland Street toward North Station to find a taxicab. As Flanagan walked several yards ahead of Burns, he noticed the defendant and Monge approaching him. According to Flanagan, the defendant gave him a "dirty look" as they passed each other but kept walking. Flanagan then heard a commotion behind him, turned around, and saw Burns standing face-to-face with the defendant. The defendant appeared to push Burns in the chest. Flanagan began walking toward Burns, who lifted up his shirt, revealing a wound to his chest. As the defendant backed away, Flanagan observed a shiny object in the defendant's hand. The defendant and Monge then got into Monge's vehicle, whereupon the defendant said, "Let's get out of here. Just drive." The vehicle "took off around the corner," but Flanagan was able to note its registration plate number. According to Monge, the defendant appeared to be "nervous and shaken up," and he seemed to be experiencing an "adrenaline rush."

The defendant disputed the circumstances surrounding the

altercation with Burns, believing this to be a case of self-defense. According to his version of the story, Flanagan, who appeared to be intoxicated, deliberately "shoulder-bumped" the defendant as they passed each other on Portland Street. Flanagan then turned to the defendant and said, "What?" The defendant responded, "All right, okay," and he kept walking toward Monge's vehicle. Suddenly, Burns, who in addition to appearing intoxicated also was bigger than the defendant, came up right behind the defendant, surprising him, and said, "What? What?" Then, as Burns began punching and shoving the defendant, Flanagan walked toward them "in an angry manner with a hand in his pocket and the other hand clenched as a fist." The defendant looked around but could not see Monge. Feeling afraid, abandoned, and outnumbered, the defendant pulled from his pocket a small folding knife that he used at work, and he stabbed Burns with it once. He then ran to Monge's vehicle, and the two men left the scene to escape the situation.

Once the incident was over, Flanagan called 911. Emergency medical technicians arrived on the scene within a few minutes and determined that Burns had a stab wound in his left chest, approximately two inches deep. Based on the registration plate information provided by Flanagan, the police located Monge that night in Chelsea, where Flanagan identified him as the driver of the vehicle, and Monge was arrested. Burns was hospitalized for two days. The police apprehended the defendant approximately eight months later.[1]

During the charge conference held after the close of the evidence in the defendant's trial, the judge brought up the issue of consciousness of guilt by stating: "I guess obviously if he's believed, then there was — then there wasn't flight from the scene inasmuch as he was fleeing because he's continued to feel that he was in peril. However, if the Commonwealth's evidence is believed, then he did flee after committing the act." In response to the judge's inquiry about what was "fair game for the jury," the prosecutor stated that a consciousness of guilt instruction would be appropriate. Defense counsel disagreed,

---

[1] The police were unable to locate the defendant right after the incident because the address information provided by the defendant's employer was out of date.

asserting that such an instruction was not warranted because the jury reasonably could not infer guilt from the defendant's flight "where there's an explanation for why he fled," namely, that he was frightened by the situation. The judge responded that if the jury did not believe the defendant's version of events and, instead, viewed the evidence in the light most favorable to the Commonwealth, then the defendant "was the aggressor, it was one on one, and that after it happened, he got in the car and had Monge take him, remove him from the scene." The judge then stated that she was going to instruct on consciousness of guilt as it pertained to leaving the scene of the altercation. Defense counsel did not object further.

2. *Instruction on consciousness of guilt.* When the judge reached the portion of her instructions pertaining to consciousness of guilt, she stated:

> "[Y]ou should never think, '[the judge is] kind of giving us an instruction like she's kind of trying to channel us in this direction or that.' It just, again, it doesn't work that way.

> "So and with regards — with regard to the instruction, I want to talk to you about what you can make of the evidence the defendant had left after the alleged incident, or after the incident that has been testified to.

> "To the extent that you heard evidence that the defendant left and, indeed, may have fled after — after the incident, the stabbing incident, you the jury can consider that if you wish in your deliberations. If the Commonwealth has proven that the defendant did that conduct, the fact that he fled the scene of the stabbing, you can consider whether such actions indicate feelings of guilt by the defendant, and whether in turn such feelings of guilt might tend to show actual guilt on this charge.

> "You are not required to draw such inferences and you should not do so unless they appear to be reasonable in light of all the circumstances of the case.

> "If you decide that such inferences are reasonable, it

will be up to you to decide how much importance to give them.

"However, you should always remember there may be numerous reasons why an innocent person might do such things. Such conduct does not necessarily reflect feelings of guilt. Please also bear in mind that a person having feelings of guilt is not necessarily guilty in fact. For such feelings are sometimes found in innocent people.

"Finally, remember that standing alone, such evidence is never enough by itself to convict a person of a crime. You may not find the defendant guilty on such evidence alone, but you may consider it in your deliberations if you choose along with all the other evidence."

At the conclusion of her instructions, the judge called the prosecutor and defense counsel to sidebar to discuss the charge. Defense counsel did not voice any objections to the judge's charge.

3. *Discussion.* The defendant acknowledges that the consciousness of guilt instruction given by the judge was the standard, approved instruction that has been in use since the principles articulated in *Commonwealth* v. *Toney*, 385 Mass. 575, 583-585 (1982) (*Toney*). See Instruction 3.580 of the Criminal Model Jury Instructions for Use in the District Court (2009). Nonetheless, he contends that such an instruction should not be given, unless a defendant requests it, in those cases where a defendant has asserted a claim of self-defense and alleged that his flight from the scene was a consequence of fear arising from the particular situation. In the defendant's view, such an instruction unfairly bolsters the Commonwealth's case because it focuses the jury's attention on the possibility that the defendant's flight was motivated by something other than fear, thereby negating his claim of self-defense. We disagree.[2]

An instruction on consciousness of guilt may be given where

---

[2]At the charge conference, defense counsel disagreed with the judge's determination that an instruction on consciousness of guilt would be appropriate. The judge considered the defendant's argument in opposition, rejected it, and gave the instruction. In these circumstances, the issue was properly preserved for appeal. See *Commonwealth* v. *Vick*, 454 Mass. 418, 423 n.5 (2009), and cases cited. Thus, we consider whether the judge erred, and, if so, whether

"there is an 'inference of guilt that may be drawn from evidence of flight, concealment, or similar acts,' such as false statements to the police, destruction or concealment of evidence, or bribing or threatening a witness." *Commonwealth* v. *Stuckich*, 450 Mass. 449, 453 (2008), quoting *Toney, supra* at 584 & n.4. See *Commonwealth* v. *Vick*, 454 Mass. 418, 423-424 (2009). "Flight is perhaps the classic evidence of consciousness of guilt." *Commonwealth* v. *Carrion*, 407 Mass. 263, 277 (1990). By itself, evidence of actions suggesting consciousness of guilt is not sufficient to convict a defendant of a criminal offense. See *Toney, supra* at 585. However, a jury "may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant." *Id.*

To determine whether a consciousness of guilt instruction is warranted, a judge need only assess the relevancy of the evidence. See *id.* at 583-584. See also *Commonwealth* v. *Villafuerte*, 72 Mass. App. Ct. 908-909 (2008). "In the case of flight, the evidence must be probative of the defendant's feelings of guilt concerning the crime of which he is accused." *Id.* at 908. See *Toney, supra* at 584. It is within the trial judge's discretion whether to instruct the jury regarding the evaluation of evidence pertaining to consciousness of guilt. See *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535, 553 (2011); *Commonwealth* v. *Prater*, 431 Mass. 86, 97 (2000); *Commonwealth* v. *Brousseau*, 421 Mass. 647, 652 (1996). We have said that, "[w]hen there are multiple possible explanations for a defendant's flight, it is for the jury to decide if the defendant's actions resulted from consciousness of guilt or some other reason." *Commonwealth* v. *Prater, supra*, citing *Commonwealth* v. *Booker*, 386 Mass. 466, 470-471 (1982).

Here, we conclude that the judge properly acted within her discretion in deciding to give an instruction on consciousness of guilt over the defendant's objection. See *Commonwealth* v. *Prater, supra*; *Commonwealth* v. *Cruz*, 416 Mass. 27, 33 (1993). The evidence showed that, after the defendant stabbed Burns, he immediately got into Monge's vehicle, and the two men quickly left the scene of the altercation. It was the province

"we can be certain that the improper instruction 'did not influence the jury, or had but very slight effect.' " *Commonwealth* v. *Stuckich*, 450 Mass. 449, 453 (2008), quoting *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

of the jury to evaluate defense evidence suggesting a reason for flight consistent with innocence, namely fear, and to consider evidence from the Commonwealth suggesting that the defendant's flight was motivated by feelings of guilt over his stabbing of Burns. The judge's instruction on consciousness of guilt fully complied with the standards enunciated in *Toney, supra* at 583-585. The judge told the jury that *they* must determine the evidence in the case, that they were not required to draw inferences from conduct that might suggest consciousness of guilt, that there are numerous reasons why an innocent person takes a particular action such as fleeing, and that she was not trying to channel the jury in any particular direction. Importantly, the judge instructed the jury that the defendant could not be convicted based on consciousness of guilt evidence alone. Moreover, the judge did not use "words tending to endorse as true any inference." *Commonwealth* v. *Harmon,* 63 Mass. App. Ct. 456, 465 (2005). The instruction could be viewed as reinforcing the defendant's theory that there are reasons for flight besides consciousness of guilt. There was no error.

Notwithstanding our conclusion, we are mindful that where self-defense is an issue, a defense attorney may have tactical reasons for not wanting a jury instruction on consciousness of guilt. See *Commonwealth* v. *Simmons,* 419 Mass. 426, 435 (1995). For example, as the defendant here suggests, a defense attorney might think that it would not help a client's case to have the judge focus the jury's attention on matters such as flight, even with cautionary language about how the evidence should be weighed. See *id.* Defense counsel simply may wish to discuss evidence pertaining to consciousness of guilt in closing argument and, in any event, leave such evidence for the jury's reflection unadorned by additional commentary from the judge. See *id.* at 435-436. However, if a prosecutor argues consciousness of guilt, the standard instruction balances the argument and adds the important caveat that a defendant may not be convicted on such evidence alone.

It remains our opinion that Instruction 3.580 of the Criminal Model Jury Instructions for Use in the District Court (2009) (consciousness of guilt), reflecting the principles articulated in *Toney, supra,* is thoughtful and well balanced. See *Com-*

*monwealth* v. *Vick, supra* at 426-427 (instruction that fully complied with standards set forth in *Toney* did not convey to jury that judge believed evidence of consciousness of guilt); *Commonwealth* v. *Knap*, 412 Mass. 712, 716 (1992) (instruction in accord with principles enunciated in *Toney* did not amount to "an improper placing of the judicial thumb on the scales against the defendant"). As it pertains to flight, the instruction implicitly acknowledges that defendants sometimes flee from the scene of a crime for a variety of reasons, and that they do not always testify at trial to put into context their reasons for flight. The instruction gives juries the *option* to consider the import of this evidence when assessing myriad factors pointing to a defendant's innocence or guilt. That said, in those cases involving a question of self-defense where a defendant does object to the inclusion of a consciousness of guilt instruction in the jury charge, a judge should give careful consideration to whether the instruction would serve a useful and proper purpose and whether it should be given at all. If a judge does decide to give such an instruction over a defendant's objection, then the judge should consider whether highlighting, or leading with, the portion of the instruction pertaining to the fact that innocent people do engage in the particular conduct at issue, and that such conduct does not necessarily reflect feelings of guilt but may be consistent with self-defense, would better preserve the neutrality of the instruction.

*Judgment affirmed.*