NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-501

COMMONWEALTH

vs.

PATRICK J. O'SHEA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Patrick J. O'Shea, was convicted of operating a motor vehicle under the influence of intoxicating liquor (OUI), G. L. c. 90, § 24 (1) (a) (1).[1] On appeal, he argues that (1) the evidence was insufficient, (2) errors in jury empanelment deprived him of a fair trial, (3) certain testimony was admitted

---

[1] The defendant was charged with OUI, third offense, in violation of G. L. c. 90, § 24 (1) (a) (1), operating with a license suspended for OUI, in violation of G. L. c. 90, § 23, and possession of an open container of alcohol in a motor vehicle, in violation of G. L. c. 90, § 24I. After the jury convicted the defendant of OUI, the judge convicted him of the subsequent (third) offense portion of the OUI charge and operating with a license suspended for OUI. The Commonwealth dismissed the open container charge.

in error, (4) trial counsel was ineffective, and (5) the cumulative effect of these errors requires reversal. We affirm.

Background. On August 19, 2022, at approximately 7:45 P.M., a Billerica police officer responded to a report about an unconscious man in the parking lot of the Turnpike Market. On arrival, the officer saw several people standing at the driver's side window of a car that was positioned "awkwardly" and "not directly straight in" the demarcated parking space. The transmission was in park, the engine was running, and the keys were in the ignition. The officer found the defendant unconscious in the driver's side seat with "saliva coming out of his mouth."

After unsuccessful attempts to rouse the defendant by tapping his shoulder and calling out, the officer performed a sternum rub. The defendant then awoke "dazed and confused," and slurred his speech as the officer spoke with him. As the defendant stepped out of the car, the officer noticed that he was unsteady on his feet; the defendant held onto the car door to keep himself upright as the officer guided him to the front of the car. He had difficulty answering the officer's questions about where he lived and how far he was from home. When the officer asked what the defendant had been doing that day, the defendant answered that he had been drinking earlier at work. The officer noted an empty nip bottle of alcohol in the driver's

2

side door panel and several unopened nip bottles on the passenger's side seat and in the center console. The officer arrested the defendant for OUI and transported him to the Billerica police station.

During the booking process, the booking sergeant noted that the defendant exhibited signs of being under the influence of alcohol, including delayed responses to questioning, slurred speech, and unsteadiness on his feet. The sergeant also detected a slight odor of alcohol on the defendant.

Discussion. 1. Sufficiency of the evidence. We review a challenge to the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the Commonwealth, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Colas, 486 Mass. 831, 836 (2021), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). To support an OUI conviction, the Commonwealth must prove that the defendant (1) operated a vehicle, (2) on a public way, (3) while under the influence of alcohol. See Commonwealth v. Palacios, 90 Mass. App. Ct. 722, 728 (2016). The defendant challenges only the third element, which required the Commonwealth to "prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished [his] ability to operate a motor vehicle safely" (emphasis omitted). Commonwealth v.

Rarick, 87 Mass. App. Ct. 349, 352 (2015), citing Commonwealth v. Connolly, 394 Mass. 169, 173 (1985). The defendant contends that the Commonwealth failed to meet this burden. We are not persuaded.

Here, the arresting officer testified that the defendant was passed out in the driver's seat and had to be awoken by a sternum rub; his speech was slurred; he had an empty nip bottle of alcohol in the driver's side panel; he admitted that he had been drinking earlier at work; he was so unsteady on his feet that he needed to hold onto his car for support; and he had parked his car "awkwardly" and "not directly straight in" the lines of the parking space. Compare Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392-393 (2017) (defendant showed "classic symptoms of alcohol intoxication," including, inter alia, slurred speech; parking "crooked[ly]" or "diagonally" across two parking spaces; swaying and inability to stand straight; and admitting to drinking three beers). Additionally, the booking sergeant noted that the defendant slurred his speech during the booking process, appeared disheveled and was unsteady on his feet, and the sergeant could smell a mild odor of alcohol emanating from the defendant. See Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 506-507 (2011) (noting "obvious" signs of intoxication where defendant had, among other indicators, "strong odor of alcohol, poor balance, and glassy, bloodshot

4

eyes").  The totality of the evidence, viewed in the light most favorable to the Commonwealth, sufficed beyond a reasonable doubt to prove that the defendant was under the influence of alcohol and that his intoxication diminished his ability to safely operate a motor vehicle.

2.  Jury empanelment.  The defendant argues that it was prejudicial error for the judge not to excuse for cause two jurors (juror no. 77 and juror no. 86) who, the defendant contends, "clearly demonstrated bias" against him (particularly as compared to juror no. 76, who was removed for cause) and did not unequivocally state that they could impartially evaluate the evidence.[2]  We disagree.  As an initial matter, while the defendant objected to the phrasing of a follow-up question to juror no. 77, he did not expressly ask that the judge remove either juror no. 77 or juror no. 86 for cause.  Also, both jurors unequivocally stated that they could be fair and impartial.

In any event, even assuming, without deciding, that there was error, we discern no prejudice.  "A trial judge is accorded considerable discretion in the jury selection process and his

---

[2] The defendant's brief makes passing references to "three jurors" who "remain[ed]" on the jury but discusses only two: juror no. 77 and juror no. 86.  To the extent the defendant is raising a third challenge, any such challenge does not rise to the level of adequate appellate argument and is waived.

5

finding that a juror stands indifferent will not be disturbed except where juror prejudice is manifest." Commonwealth v. Clark, 446 Mass. 620, 629-630 (2006). When a defendant claims that the trial judge erroneously failed to remove a juror for cause, "prejudice generally is shown by the use of a peremptory challenge to remove [that] juror . . . together with evidence that the defendant later was forced to accept a juror he would have challenged peremptorily but was unable to because his peremptory challenges had been exhausted." Commonwealth v. McCoy, 456 Mass. 838, 842 (2010).

Here, as to both contested jurors, the defendant had a peremptory challenge available to him that he failed to exercise and stated twice that he was satisfied with the jury. See Commonwealth v. Morales, 440 Mass. 536, 543 (2003) (expression of satisfaction with seated jurors and failure to exhaust peremptory challenges belies claim of partiality); Commonwealth v. Nelson, 91 Mass. App. Ct. 645, 647-648 (2017) (no prejudice where defendant did not peremptorily challenge contested juror, did not ask for additional peremptory challenges, and affirmatively accepted jury). As the defendant chose not to peremptorily challenge either juror, and ultimately did not exhaust his peremptory challenges, "we are unable to conclude that the defendant 'was forced to accept a juror whom he

otherwise would have challenged peremptorily.'"  Id. at 648,
quoting Commonwealth v. Susi, 394 Mass. 784, 789 (1985).

3.  Evidentiary issues.  a.  Impairment testimony.  The
defendant contends that the arresting officer improperly
testified to the ultimate issue of impairment to operate a motor
vehicle.  Lay witnesses, such as police officers, testifying in
an OUI case may offer their opinion on "a defendant's level of
sobriety or intoxication but may not opine whether a defendant
operated a motor vehicle while under the influence of alcohol or
whether the defendant's consumption of alcohol diminished his
ability to operate a motor vehicle safely."  Commonwealth v.
Canty, 466 Mass. 535, 544 (2013).  The latter comes too close to
providing an opinion on the ultimate issue of guilt or
innocence.  See id. at 542-543.

The defendant bases his argument on three statements:
first, on direct examination, the officer testified that
"slurred speech would be one of the [tell-tale] signs of someone
that's been operating under the influence"; second, in answer to
the prosecutor's question whether she had formed an opinion as
to the defendant's intoxication, the officer stated that based
on her observations, the defendant "was arrested for operating
under the influence"; and third, on cross-examination, the
officer noted that the defendant was "showing signs from [her]
training and experience of operating under the influence."  None

7

of these statements was the subject of an objection or a motion to strike; accordingly, we review only to determine whether any error gave rise to a substantial risk of a miscarriage of justice.  See Commonwealth v. Saulnier, 84 Mass. App. Ct. 603, 606-607 (2013).

Assuming that this was error, we are not persuaded that the testimony created a substantial risk of a miscarriage of justice.  Here, as in Canty, several factors mitigate "the risk of prejudice arising from the admission of an opinion that closely touches on the ultimate issue of guilt."  466 Mass. at 545.  The officer offered her opinion as a lay witness, which, even when presented by a police officer, renders it "less likely that a jury would forego independent analysis of the facts and bow too readily to the opinion" (quotation and citation omitted).  Id.  This risk was further diminished by the judge's specific instruction that it was for the jury alone "to determine whether the defendant was under the influence of alcohol," and to accept or reject any opinion testimony they heard -- an instruction mirroring that given in Canty.  See id. See also Commonwealth v. Dufresne, 489 Mass. 195, 208 (2022). Moreover, as discussed supra, the Commonwealth presented compelling evidence, beyond the improper opinion testimony, "that the defendant's intoxication impaired [his] ability to operate a motor vehicle."  Gallagher, 91 Mass. App. Ct. at 390.

And, while the defendant points to three lines of testimony referencing operating under the influence, one was in the context of identifying the underlying charge for the arrest, a fact of which the jury were apprised during the initial jury charge, and another was elicited by the defense attorney on cross-examination, see Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 510 (2009) (no error where defendant "opened the door" to unfavorable testimony during cross-examination).  We discern no risk that justice miscarried.

b.  Expert testimony.  The defendant additionally argues that it was prejudicial error for the arresting officer to testify that alcohol is odorless, a fact the officer testified to during defense counsel's cross-examination, based on "what [had] been explained [to her by] a doctor."  He contends that this statement amounted to impermissible expert testimony about "scientific information [the officer] had garnered from an unknown doctor."  Because the defendant objected at trial, we review for prejudicial error.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

An error is not prejudicial where it "did not influence the jury, or had but very slight effect" (citation omitted).  Commonwealth v. Colina, 495 Mass. 13, 38 (2024).  Here, the challenged testimony was brief, the judge sustained defense counsel's objection, and the judge instructed the jury during

preliminary jury instructions that where an objection was sustained, the jury "may not consider the answer in any way whatsoever."  As "'[w]e presume that the jury follow the judge's instructions,' including instructions to disregard testimony," this mitigated any risk of prejudice.  Dufresne, 489 Mass. at 208, quoting Commonwealth v. Cortez, 438 Mass. 123, 130 (2002).

4.  Ineffective assistance of counsel.  The defendant claims that trial counsel was ineffective for (1) introducing video footage of the booking process during cross-examination of the booking sergeant, and (2) failing to exhaust his peremptory challenges.  Generally, to prevail on an ineffective assistance of counsel claim a defendant must demonstrate that, but for his counsel's "serious incompetency, inefficiency, or inattention," Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), "the result of the proceeding would have been different." Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), citing Strickland v. Washington, 466 U.S. 668, 694 (1984).  Here, the claim is presented in its "weakest form," as it is asserted for the first time on direct appeal rather than through a motion for new trial, leaving us without the benefit of an affidavit from trial counsel or findings on the matter from the trial judge.  Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002).  We address such claims on direct appeal only "when the factual basis of the claim

10

appears indisputably on the trial record" (citation omitted). Commonwealth v. Zinser, 446 Mass. 807, 811 (2006).

a.  Booking video footage.  The defendant contends that by playing the booking video footage during cross-examination of the booking sergeant, rather than during the defendant's case-in-chief, trial counsel was ineffective because doing so deprived the judge of "the opportunity to determine if the Commonwealth's case had deteriorated."  We are not persuaded.

The defendant fails to show that the outcome would have been different.  See Mahar, 442 Mass. at 15.  "Deterioration does not occur simply because the defendant presented evidence that contradicted the Commonwealth's case."  Commonwealth v. Nhut Huynh, 452 Mass. 481, 485 (2008).  Rather, the contrary evidence must have been "so overwhelming that no rational jury could conclude that the defendant was guilty."  Commonwealth v. O'Laughlin, 446 Mass. 188, 204 (2006).  At most, the video footage demonstrated to the jury that the defendant was able to stand and walk unassisted during booking, in contrast to the booking sergeant's testimony that the defendant was unsteady on his feet.  Even if counsel had elected to present the video footage during the case-in-chief, based on the totality of the evidence presented, this would not have shown the Commonwealth's case to be "incredible or conclusively incorrect."  Kater v. Commonwealth, 421 Mass. 17, 20 (1995), S.C., 432 Mass. 404

11

(2000).  Indeed, it was for the jury to resolve any discrepancy in the evidence.  See Commonwealth v. Lopez, 484 Mass. 211, 215 (2020).

b.  Peremptory challenges.  The defendant further asserts that trial counsel was ineffective for failing to exhaust his peremptory challenges.  Acknowledging that this was a strategic decision by counsel, the defendant argues that it was manifestly unreasonable not to exercise the remaining peremptory challenge on either of the two contested jurors discussed supra, because "the evidence was weak and the [jurors'] bias potent."  See Commonwealth v. Kirkland, 491 Mass. 339, 348-349 (2023) (strategic decisions by counsel evaluated based on whether manifestly unreasonable when made).

Whether to exercise a peremptory challenge of a particular juror is a tactical decision left to the judgment of counsel, see Commonwealth v. Ortiz, 50 Mass. App. Ct. 304, 309 (2000), and it is not manifestly unreasonable where the juror's stated impartiality was accepted, on inquiry, by the judge.  See Commonwealth v. Torres, 453 Mass. 722, 731 (2009) (counsel not ineffective for failing to exercise peremptory challenge on either of two jurors who judge declared impartial, following inquiry, and counsel confirmed he was satisfied).  Here, the judge conducted a detailed colloquy with both jurors regarding their ability to impartially evaluate the evidence and follow

12

the judge's instructions, during which he had the opportunity to assess the jurors' inflection and demeanor, and ultimately found both jurors indifferent. See Commonwealth v. Rios, 96 Mass. App. Ct. 463, 470-472 (2019). And, as the defendant did not submit an affidavit from trial counsel, we do not know counsel's reasons for retaining the peremptory challenge following inquiry into the jurors' alleged partiality. See Commonwealth v. Gonzalez, 443 Mass. 799, 809 n.10 (2005) ("It is significant that there is no affidavit from trial counsel to inform us of his strategic reasons for these decisions"). We see no indication on this record that the decision was manifestly unreasonable.

5. Cumulative error. Finally, the defendant claims the alleged errors cumulatively deprived him of a fair and impartial trial. In the context of the evidence taken as a whole, we are persuaded that "[a]ny cumulative error . . . was 'no more prejudicial than any individual errors, which had minimal

impact, if any." Commonwealth v. Lessieur, 488 Mass. 620, 632 (2021), quoting Commonwealth v. Duran, 435 Mass. 97, 107 (2001).

Judgments affirmed.

By the Court (Blake, C.J., Shin & Walsh, JJ.[3]),

Clerk

Entered: June 23, 2025.

---

[3] The panelists are listed in order of seniority.