NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-299

COMMONWEALTH

vs.

DARYL DIRTION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0.

A Superior Court judge convicted the defendant of unlawful possession of a firearm.  On appeal, the defendant argues a motion to suppress the firearm, which had been recovered by police pursuant to an allegedly investigatory stop, was wrongly denied.  We agree that the stop was impermissible, and therefore, we vacate the judgment and set aside the guilty finding.

Background.  At approximately 6:15 A.M. on August 12, 2021, an FBI agent received a phone call from a "confidential informant" stating that "moments before the call they had observed a black male, estimated age of twenty-two years, wearing a white jumpsuit [and] riding a bicycle" near a certain

restaurant in Roxbury, and that the man possessed a firearm which he "had been showing . . . to people in a bank parking lot" behind that restaurant. The FBI agent relayed the message to the Boston police department, which dispatched officers to that location within ten minutes.

Officer Askins and Officer Walsh were the first to arrive and saw the defendant, matching the informant's description, entering the restaurant. As Officer Askins entered the restaurant, he "approached the defendant, grabbed the defendant's arm, and attempted to guide him away." While Officer Askins was "holding" the defendant, Officer Walsh entered the restaurant, "recognized the defendant," and "was aware that the defendant did not have a license to carry firearms." The officers then removed the defendant from the restaurant and Officer Askins conducted a patfrisk, finding and retrieving "a pistol from the pocket in a secondary layer of pants."

The defendant was charged with unlawful possession of a firearm. A Superior Court judge held an evidentiary hearing and denied the defendant's motion to suppress the firearm. After a bench trial, the defendant was convicted of the lone charge.

Discussion. On appeal, the defendant claims that the motion judge erred in denying his motion to suppress, asserting that his seizure by police was unconstitutional for the

2

independent reasons that the informant's tip was unreliable, that the tip did not substantiate reasonable articulable suspicion of illegality, and that the officers' actions in detaining the defendant were beyond the scope permissible under the circumstances.

"In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted). Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 83 (2020). To assess the propriety of the police officers' seizure of the defendant, we must determine "whether the facts known to the police at the time of the seizure establish[ed] reasonable suspicion that the defendant had committed, was committing, or was about to commit a crime." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017). "Reasonable suspicion must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience" (quotation and citation omitted). Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 8 (2023). This can be satisfied by an informant's reliable tip, the reliability of which may be bolstered by independent police corroboration. See Commonwealth v. Lyons, 409 Mass. 16, 19 (1990). The suspicion, however, "must be reasonable before the [seizure] begins" (citation omitted). Commonwealth v. DeJesus, 72 Mass.

3

App. Ct. 117, 121 (2008).  Lastly, "[c]arrying a gun is not a crime," Commonwealth v. Alvarado, 423 Mass. 266, 269 (1996), and so "[a]n anonymous tip that someone is carrying a gun does not, without more, constitute reasonable suspicion to conduct a stop and frisk of that individual."  Commonwealth v. Barros, 435 Mass. 171, 177 (2001).

The informant's report of a person holding a firearm in public, standing alone, was insufficient grounds for a reasonable articulable suspicion of illegality.  The informant stated that a man "was in possession of a firearm and had been showing that firearm to a group of individuals."  The motion judge described this statement as a report that the defendant was "brandishing a gun" (emphasis added).  However, there is nothing in the record to support anything more than the defendant displaying the firearm to the group of people.  And in Massachusetts, public exhibition of a firearm does not transform gun possession into illegal conduct justifying seizure.  See, e.g., Commonwealth v. Gomes, 458 Mass. 1017, 1019 (2010) ("report of [defendant] holding a gun in the air" did not justify seizure); Barros, 435 Mass. at 172, 177 (tip that defendant "t[ook] a handgun from his waistband and show[ed] it to others who were with him" did not justify seizure); see also Commonwealth v. Morales, 106 Mass. App. Ct. 270, 271, 276 (2025) (report of defendant "waving a gun" while walking by himself did

4

not justify seizure).  In short, articulable reasonable suspicion of illegality cannot arise merely from possession alone.  See Alvarado, 423 Mass. at 269.  Although Officer Walsh did recognize the defendant and "knew [he] did not have a license to carry," the Commonwealth concedes that this recognition only "occurred after [his] seizure," and does not, therefore, add to the reasonable suspicion calculus.

Lastly, while reasonable suspicion "may arise where there is an indication (in the tip or otherwise) of . . . an imminent threat to public safety" (quotation and citation omitted), Gomes, 458 Mass. at 1019, no facts here support such a finding.  As in Gomes, "[t]here was no evidence that the gun had been fired, pointed at another person, or otherwise handled in a way that posed a threat to someone, nor was there evidence that the defendant was a dangerous person."  Id.  Neither "holding a gun in the air," id., nor "show[ing] it to others" around him, Barros, 435 Mass. at 172, constitutes a threat which per se justifies an investigatory stop.  Thus, without any preseizure observations by the police tending to suggest illegality, a report of a man "showing a gun to other people, outside, in a bank parking lot just before 6:30 in the morning" likewise cannot justify an investigatory stop.  The seizure and patfrisk

5

were unjustified, and the recovered firearm must be suppressed.[1,2]

Judgment vacated.

Finding set aside.

By the Court (Neyman, D'Angelo & Allen, JJ.[3]),

*Paul Little*

Clerk

Entered:  January 7, 2026.

---

[1] Because we hold that the stop was unjustified regardless of the reliability of the tip, we need not and do not resolve questions raised as to that reliability or as to the constitutionality of the manner of arrest.

[2] We do not agree with the defendant's contention that a required finding of not guilty should now enter.  See Kater v. Commonwealth, 421 Mass. 17, 18 (1995).  Thus, it is in the Commonwealth's discretion whether to retry or dismiss the case.

[3] The panelists are listed in order of seniority.